

**FILED**

AUG 18 2014

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RODNEY A. EDMUNDSON, <br><br> Plaintiff, <br><br> vs. <br><br> TAMMY BOWEN, <br><br> Defendants. | CV 13-00032-M-JCL <br><br> ORDER |

This matter is before the Court on Plaintiff Rodney Edmundson's Motion to Compel Discovery (Doc. 28) and Defendant Bowen's Motion for Summary Judgment. (Doc. 31.) Pursuant to 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and upon the written consent of the parties, this matter has been assigned to the undersigned to conduct all further proceedings, enter judgment, and conduct all post-trial proceedings in this matter. (Notice of Assignment, Doc. 20).

For the reasons discussed, the Motion to Compel will be denied, the Motion for Summary Judgment will be granted, and judgment will be entered in favor of Defendant.

1

## I. BACKGROUND[1]

Edmundson was incarcerated in the Flathead County Detention Center from April 25, 2012 to August 7, 2012.[2] (Bowen Facts, Doc. 34 at ¶ 1; Edmundson Facts, Doc. 38 at ¶ 1.) During this time, Edmundson suffered from back and hip pain as a result of a slip and fall in 2005. (Amended Complaint, Doc. 6 at 3.) During his prior incarcerations at the Flathead County Detention Facility, Edmundson received prescription pain medications. (Amended Complaint, Doc. 6-1 at 4, ¶ 19.)

Nurse Bowen has been a registered nurse for 30 years and is a nurse provider at the Flathead County Detention Facility. (Bowen Facts, Doc. 34 at ¶ 2.) As part of her responsibilities at the detention facility, Nurse Bowen dispenses prescription medications and, where appropriate, medications as requested by inmates. (Bowen Facts, Doc. 34 at ¶ 3.)

---

[1]Consistent with summary judgment standards discussed below, the following facts are taken from the materials of record. The Court views the facts and inferences from them in the light most favorable to Smith as the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587-88 (1986); *Betz v. Trainer Worthham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

[2]There is a dispute between the parties regarding how many times prior to April 25, 2012 Edmundson had been incarcerated in the Flathead County Detention Center. Suffice it to say, this was not Edmundson's first visit to this jail. The precise number of prior incarcerations is irrelevant for purposes of this motion.

2

On May 4, 2012, Edmundson spoke with Nurse Bowen about resuming his prescription medications he had purportedly been prescribed prior to his incarceration. Nurse Bowen informed Edmundson that she did not believe that he had been examined by an outside doctor and prescribed medications. She told him she would be calling the Bozeman Police Department to verify that Edmundson had been arrested with a backpack containing medications which the authorities at the Gallatin County Detention Facility refused to give him. Nurse Bowen told Edmundson that she did not know anything about his medications and he needed to submit another sick call request to be seen by the detention facility's physician, Dr. Dusing. (Amended Complaint, Doc. 2-1 at 6-7, ¶¶ 24-25.)

According to Bowen, Edmundson was receiving Tylenol, a brand name for Acetaminophen, during his incarceration on a "prn" or as needed basis. (Bowen Affidavit, Doc. 34-2 at 2, ¶ 5-6.) Edmundson disputes he was receiving Tylenol. But he does not dispute he was receiving a generic Acetaminophen. (Edmundson Response Brief, Doc. 37 at 4.)

On June 4, 2012, Edmundson submitted a grievance against "Medical Services" stating:

> In regards to the medical services/treatment here at F.C.D. is "above" fair, the problem I've encountered is that I'm refused my prescribed medication now presently since 4-26-2012, when I arrived for the second time this year (the first being (1-20-2012 thru 3-5-2012),) 1-

3

> 20 thru 3-5 I was given my prescribed tramodol 50 mg & norflex 100
> mg once a day; now it seems I have to see a doctor, or they needed
> information confirming that when I was released on 3-5-2012 did I
> get see [sic] by a Doctor and did I get my prescriptions filled, all this
> information has been verified a month ago, but I'm still being denied
> my medication(s) and to be see [sic] by Doctor Doozing.

(June 4, 2012 Grievance, Doc. 37-2 at 13.)

Edmundson alleges he submitted a second grievance on June 7, 2012 but it has not been produced by either party. In his amended complaint, Edmundson alleges he stated the following in that grievance,

> I have chronic pain, I was given a prescription pain medicine from
> 1-2012 thru march 5, 2012 for my serious chronic medical condition
> by Defendant/"Dusing" and an outside physician. plaintiff came back
> to F.C.D.C. and was refused prescribed medications. plaintiff suffers
> pain needlessly by your conduct.

Edmundson alleges that for the action requested, he stated in part "Be given pain meds for my chronic pain." (Amended Complaint, Doc. 6-1 at 8-9, ¶ 51.)

Edmundson contends that at the morning medication call on June 14, 2012, he saw Nurse Bowen through the see-through plexiglass door and motioned for her and banged on the door. He contends she gave him a disgusting look and proceeded down the opposite direction of the hallway. (Doc. 38, Edmundson Facts at 4-5, ¶ 3; Doc. 37-1, Edmundson Affidavit at 4 ¶ 14.) Nurse Bowen counters that Edmundson did not appear at the medication call or request any Tylenol on June 14, 2012. (Bowen Facts, Doc. 34 at ¶ 5; Bowen Affidavit, Doc.

34-2 at 2, ¶ 7.)

On June 15, 2012, Edmundson appeared at medication call requesting Tylenol. According Edmundson's medical file the following occurred on June 15, 2012:

> Inmate came to medication cart for am Tylenol, when handed the 2 tabs he dropped them onto the top of the cart and stated "these give me nosebleeds, I want the ones in the packet." I told inmate they were exactly the same medication which was Ex-str Tylenol. He stated "no they're not." I told him if he was getting nosebleeds he should try the Tylenol off commissary which is regular strength, inmate interrupted stated he was indigent. I attempted to say he could get this medication regardless, however inmate interrupted stating "you aren't going to give me a packet are you?" I told inmate no, asking if he wanted the 2 tabs sitting on top of the medication cart. Inmate walked away swearing.

(Medical record, Doc. 34-1 at 10.)

Edmundson claims that on June 15, 2012, Nurse Bowen had a container of the generic Acetaminophen which he had been taking since his arrival and which he had previously explained to her caused him to suffer from side effects including stomach problems. Edmundson contends Nurse Bowen told him that this medication was all he was going to get from her. (Doc. 37-1, Edmundson Affidavit at 4 ¶ 15.)

On June 15, 2012, Edmundson submitted a grievance regarding Nurse Bowen stating,

> At approximately 0800 hours on 6/15/2012, on 0800 routine medical call I was dispensed two (generic) tylenol by the FCD Nurse (Tammy)(I have a pending grievance at this present time against this medical employee concerning my prescription medications) I explained to her that after taking these "specific" generic tylenol that my nose was starting to bleed and I was starting to have stomach problems from taking these (8) pills a day for my hip and lower back pain, but I would take another brand which she has on the medical cart that doesn't "presently" give me these symptoms, so she {flatly} refused to give me anything, this wanton act/conduct is predicated on reprisal for the first grievance I filed against her.

(June 15, 2012 Grievance, Doc. 34-1 at 9.)

Nurse Bowen asserts Tylenol was available through the commissary to indigent inmates without cost. (Bowen Facts, Doc. 34 at ¶ 8.) Edmundson does not dispute Bowen's assertion, but points out that when an inmate is without funds and orders indigent items off the commissary list, the order is placed on his account in the negative. And, if and when, the inmate receives funds on his account, the detention facility will deduct half of the funds which an inmate may owe for indigent purchases. (Doc. 38, Edmundson Facts at 5, ¶ 6.)

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

**B. Discussion**

    **1. Denial of Medical Care**

To state a § 1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

In the Ninth Circuit, the test for deliberate indifference to medical needs is

two-pronged: (1) "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012)(quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The second prong requires a showing of: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 quoting *Jett*, 439 F.3d at 1096. "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988)(citing *Estelle*, 429 U.S. at 104-05).

Construing the facts in the light most favorable to Edmundson, Nurse Bowen is entitled to summary judgment. Edmundson states Nurse Bowen saw him at the June 14, 2012 morning medication call, but purposely ignored him, thus depriving him of two tablets of extra strength Tylenol that morning. Nurse Bowen, in turn, states that Edmundson did not appear at the morning pill pass. It is undisputed, however, that Edmundson could have obtained brand name Tylenol

8

from the commissary. A package of two tablets of Tylenol Extra Strength is listed on the indigent items list on the commissary order form. (Doc. 37-2 at 3.) Edmundson does not dispute that he could have obtained Tylenol from the commissary. Whether he would be eventually charged for the Tylenol is irrelevant. Charging inmates for medical care does not violate the Constitution where medical care is not denied. *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) ($3.00 co-pay fee for prisoners cannot be construed as deliberate indifference to inmates' medical needs). While denial of medical care may support a claim under the Eighth Amendment, charging for it by using a negative balance on an account statement does not.

In his June 15, 2012 grievance, Edmundson indicated that Nurse Bowen dispensed to him a generic Tylenol. He explained that these specific generic Tylenol caused his nose to bleed and caused stomach problems. He requested another brand which she had on the medical cart which he alleges did not give him those symptoms. He stated in the grievance form that Nurse Bowen refused to give him anything. (June 15, 2012 Grievance, Doc. 37-2 at 11.) Again, Edmundson could have obtained a package of Extra Strength Tylenol from the commissary. Moreover, Nurse Bowen did not refuse to give him pain relievers on June 15, 2012, just not the pain relievers he wanted. Allegations that treatment

9

has been requested and denied because a difference of opinion with medical staff, absent more, do not state a claim for deliberate indifference. *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996).

Edmundson's claims for denial of medical care will be dismissed.

### 2. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal ." *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, a plaintiff must allege sufficient facts to plausibly suggest a nexus between the two. *See Huskey v. City of San Jose,* 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). Thus, while "the timing and nature" of an allegedly adverse action can "properly be considered" as circumstantial evidence of retaliatory intent, the official alleged to have retaliated must also be alleged to have been aware of the plaintiff's protected

conduct. *See Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315–16 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Edmundson makes the vague allegation that Nurse Bowen retaliated against him by stating that he would not get any medical treatment if he filed a grievance. (Amended Complaint, Doc. 6-1 at 10, ¶60.) He indicates this is mentioned in his June 7, 2012 grievance which Defendants did not produce in discovery and which he was not afforded copies of at the jail. (Edmundson's Response Brief, Doc. 37 at 9.)³ There is no indication when this statement was made or in what context it was made, therefore, it fails to sufficiently establish retaliatory intent.

Moreover, Edmundson has not established adverse action being taken against him. In a First Amendment retaliation case, an adverse action is "an act that is reasonably likely to deter [the plaintiff] from engaging in constitutionally protected speech." *Blair v. Bethel School Dist.*, 608 F.3d 540, 543 n. 1 (9th Cir. 2010) (*quoting Coszalter v. City of Salem*, 320 F.3d 968, 970 (9th Cir. 2003)). The question is whether the alleged retaliation would "chill or silence a person of ordinary firmness" from continuing to speak out. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (*quoting Crawford–El v.*

---

³There is no mention, however, of this statement in the Amended Complaint where Edmundson quotes the June 7, 2012 grievance. (Amended Complaint, Doc. 6-1 at 8-9, ¶ 51.)

11

*Britton*, 93 F.3d 813, 826 (D.C.Cir. 1996) (*vacated on other grounds by Crawford–El v. Britton*, 523 U.S. 574 (1998)). For an action to be adverse, it must at least threaten some harm to the plaintiff, if not cause actual harm. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Edmundson alleges Nurse Bowen ignored him at the morning pill pass on June 14, 2012 and did not give him the type of Tylenol he wanted on June 15, 2012. The Court does not construe these actions to be sufficiently adverse to chill or silence a person of ordinary firmness from continuing to speak out. Even if Nurse Bowen ignored Edmundson on June 14 and refused to give him the medication he wanted on June 15, he could have obtained Tylenol from the commissary, as previously discussed. Thus, there was no actual harm. A minor inconvenience is insufficient to establish adverse action.

Defendant's Motion for Summary Judgment will be granted on the retaliation claim.

### III. MOTION TO COMPEL

#### A. Standard

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding:

> any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody,

12

> condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The Court has broad discretion to manage discovery. *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (citation omitted); *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011) (*citing Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir.1988)).

### B. Analysis

The only request at issue in the Motion to Compel is Edmundson's Request for Production of Documents No. 1 which sought:

> Any and all grievances, complaints, or other documents received by the F.C.D.C. jail staff, Commander, or Chief concerning the mistreatment of inmates by defendant Tammy Bowen, and any memoranda, investigative files, or other documents created in response to such complaints since January 2012.

(Discovery Requests, Doc. 29-1 at 2.) Even if there were multiple prior complaints against Nurse Bowen, it would not effect the ruling on the motion for summary judgment. Nurse Bowen's prior acts cannot establish her actions on June 14 and 15, 2012. As such, the motion to compel will be denied.

## IV. CONCLUSION

Based upon the foregoing, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Motion to Compel is DENIED.

The Clerk is directed to enter judgment in favor of Defendants and close this case.

The Court certifies that any appeal of this decision would not be taken in good faith.

DATED this 18th day of August, 2014.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate